```
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EASTMAN KODAK COMPANY,

                          Plaintiff,           02-CV-6441T

            v.                                 DECISION
                                               and ORDER
WACHOVIA BANK NATIONAL ASSOCIATION,
as Successor in Interest by Merger
to First Union National Bank,

                          Defendant.
_____
```

INTRODUCTION

Plaintiff Eastman Kodak Company, ("Kodak") brought this action in New York State Supreme Court, Monroe County, seeking damages against defendant Wachovia Bank National Association, ("Wachovia") for Wachovia's alleged breach of contract, fraud, and tortious interference with contractual relations. By Notice dated August 21, 2002, Wachovia removed this action to federal court on grounds of diversity jurisdiction. Kodak subsequently moved to remand this action to State Court on grounds that both parties are New York citizens, and therefore, there is no diversity between the parties, which motion was denied on November 4, 2002. Thereafter, the parties agreed to stay the action pending completion of a separate bankruptcy action proceeding in the United States Bankruptcy Court for the Northern District Of Georgia, which action became final on December 11, 2006. Less than one month later, on January 8, 2007, Wachovia filed a motion to dismiss

plaintiff's Complaint which is now pending for determination by this court.

## BACKGROUND

The following allegations are set forth in the plaintiff's Complaint. The instant dispute between Kodak and Wachovia arises from dealings that the parties had with each other, and with a third party, Wolf Camera, Inc. ("Wolf"). Wolf was a retailer of photographic equipment and film. Wolf sold and distributed significant amounts of Kodak film, and in 1992, Kodak entered into a supply and financing agreement with Wolf. Under the terms of the agreement, Kodak agreed to supply film to Wolf at a specified price for sale through Wolf's retail outlets, and Kodak agreed to lend money to Wolf to facilitate Wolf's expansion and penetration into both new and existing retail markets.

Wachovia, through its predecessor in interest First Union National Bank, was also a creditor of Wolf. As part of its relationship with Wolf, Kodak agreed to guarantee up to $3,000,000.00 of Wolf's debt to Wachovia, and further agreed to subordinate its own interest to Wachovia's.

In 1996, Wolf and Kodak amended their agreement, and Kodak agreed to loan Wolf an additional $8,000,000.00 and guaranty Wolf's debt to Wachovia up to $20,000,000.00, at Wolf's option. According to Kodak, the purpose of the additional loan money was to finance

2

Wolf's expansion, which Kodak believed would enhance sales of its film and other products.

In 1998, Wachovia increased Wolf's revolving line of credit to $60,000,000.00, and Wolf, contemporaneously, exercised its option to have Kodak guaranty $20,000,000.00 of Wolf's debt to Wachovia. In September, 1998, Kodak financed Wolf's acquisition of Fox Photo, a chain of approximately 450 retail photographic stores. Concurrently, Wachovia, acting as a lender and as an agent for other lenders, committed to lend Wolf $100,000,000.00 on a revolving line of credit.  Kodak, which also entered into an amended and restated loan agreement with Wolf, agreed to subordinate its right to receive payment on the debt owed by Wolf to Kodak to Wachovia's right to receive payment from Wolf on the debt Wolf owed to Wachovia.  At the same time, Kodak, Wachovia and Wolf entered into an Intercreditor Agreement pursuant to which Kodak and Wachovia agreed to use their best efforts to provide each other with notice of actions that could "significantly affect the other Secured Creditor with regard to the ability of [Wolf] to meet its obligations to the Secured Creditor."

In July, 1999, Wolf's financial projections indicated that it would suffer a shortfall in earnings, and that as a result, it would need additional capital to remain in compliance with certain covenants made to Wachovia in its borrowing agreements with Wachovia.  Wolf and Wachovia, with notice to and the consent of

Kodak, agreed to temporarily allow Wolf to increase its borrowing ratios.

Thereafter, Kodak and Wolf entered into additional negotiations for the purpose of continuing Wolf's expansion. In February 2000, while still negotiating with Kodak, Wolf allegedly informed Wachovia (without also informing Kodak) that its earnings to debt ratio would violate its covenants to Wachovia, and that it would be suffering cash shortages. According to Kodak, on March 2, 2000, Wachovia, knowing that Wolf was negotiating a $30,000,000.00 loan from Kodak, amended its credit agreement with Wolf to allow Wolf to increase its borrowing ratios. Kodak contends that Wachovia failed to notify Kodak of its decision, and failed to obtain Kodak's consent to the increase in Wachovia's borrowing limits, in violation of the Intercreditor Agreement. According to Kodak, Wolf and Wachovia did not inform Kodak of Wolf's deteriorating financial position because it did not want that information to hinder Wolf's ability to get the loan.

In late March, 2000, Kodak and Wolf entered into a Second Amended and Restated Loan and Purchase Agreement pursuant to which Kodak agreed to loan Wolf $30,000,000.00 on an interest-free basis. According to the terms of the agreement, the loan was to be used exclusively for new store development and upgrading of newly-acquired stores. Wachovia was aware of the loan negotiations

between Kodak and Wolf, and draft loan documents were sent to Wachovia for comment and approval.

According to Kodak, at the same time it was negotiating the terms of the Second Amended and Restated Loan and Purchase Agreement with Wolf, Wachovia (without Kodak's knowledge) was demanding that Wolf sign an agreement under which it would pay to Wachovia all of the proceeds of the loan. Indeed, Wolf signed such an agreement on or about March 28, 2000. Kodak contends that Wachovia forced Wolf to sign the agreement despite knowing that its demand that Wolf pay the loan proceeds to Wachovia was in direct conflict with, and indeed would cause a breach of Wolf's obligation to use the loan proceeds to develop new retail locations. Upon Kodak's delivery of the $30,000,000.00 to Wolf, Wolf paid the money directly to Wachovia.

DISCUSSION

I.   Defendant's Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal of the complaint where the plaintiff has failed to state a claim upon which relief can be granted. When evaluating a Rule 12(b)(6) motion, the court must ascertain, after presuming all factual allegations in the pleading to be true and viewing them in the light most favorable to the plaintiff, whether or not the plaintiff has stated any valid ground for relief. Ferran v. Town of Nassau, 11 F.3rd 21, 22 (2d Cir. 1993), cert. denied, 513 U.S.

1014 (1994). The court may grant a Rule 12(b)(6) motion only where "`it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

Kodak alleges three causes of action in its Complaint. First, Kodak alleges that Wachovia breached a contract between the parties. Second, Kodak contends that Wachovia committed fraud in dealing with Kodak. Third, Kodak contends that the defendant engaged in tortious interference with contract. I discuss these claims seriatim.

II.  Breach of Contract

"To establish a prima facie case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." National Market Share, Inc. v. Sterling Nat. Bank, 392 F.3d 520, 525 (2nd Cir. 2004).

In the instant case, Kodak has adequately alleged the elements of claim for breach of contract. Kodak has alleged the existence of a valid contract (the Intercreditor Agreement) between Kodak and Wachovia. Kodak has further alleged that Wachovia violated that contract by failing to comply with its contractual duty to use its "Best efforts" to inform Kodak of any actions that could have significantly affected Wolf's ability to meet its obligations to

Kodak. Specifically, Kodak contends that Wachovia did not inform Kodak of its decision to temporarily waive Wolf's financial defaults to Wachovia, and its intention to require Wolf to pay $30,000,000.00 in loan funds received from Wolf directly to Wachovia. Such allegations sufficiently allege a breach of Wachovia's duty to inform Kodak of actions that could have affected Wolf's ability to satisfy its financial obligations to Kodak.

Finally, Kodak has sufficiently alleged that it was damaged as a result of Wachovia's alleged breach of the Intercreditor Agreement. Kodak alleges that because its $30,000,000.00 loan to Wolf was not used to develop retail outlets, but instead was used to pay off existing debt, Kodak suffered from the loss of the loan proceeds, and did not receive the benefit of new retail outlets for its products.

Wachovia contends that Kodak has failed to state a claim for breach of contract because the specific provision of the Intercreditor Agreement allegedly breached by it provides that neither party to the agreement shall be liable for a failure to notify absent a showing of bad faith, willful misconduct, or gross negligence, and that Kodak has failed to make such an allegation. The Complaint, however, at paragraph 99, clearly alleges that Wachovia "acted in bad faith, intentionally, willfully or in a grossly negligent manner." Assuming the allegations in the Complaint to be true, as the court must when considering a motion

to dismiss, I find that Kodak has sufficiently alleged a breach by Wachovia of the Intercreditor Agreement. While Wachovia contends that Kodak's allegations are conclusory, and that its actions were not in bad faith but in fact justifiable, I find that under the rules of notice pleading, Kodak has sufficiently alleged bad faith intentional, or willful conduct. Whether or not Wachovia's actions were justified is, of course, a question not suitable for resolution on a motion to dismiss.

Wachovia next claims that Kodak fails to state a claim for breach of contract because a review of the pleadings reveals that Kodak, in fact, breached the Intercreditor agreement, and therefore may not maintain a breach of contract action against Wachovia. Because this court, at this early stage of the proceeding, cannot find that Kodak breached the terms of the Intercreditor Agreement as a matter of law, Wachovia's claim of Kodak's alleged breach of contract cannot negate any of the adequately-alleged elements of Kodak's prima facie claim of breach of contract.

Because I find that Kodak has sufficiently stated the elements of a valid claim for a breach of contract, I deny defendant's motion to dismiss plaintiff's contract claims.

III. Fraud

Kodak contends that Wachovia engaged in fraud by misrepresenting to Kodak that it consented to the provision of the loan agreement between Kodak and Wolf that required Wolf to spend

the loan proceeds it received from Kodak to develop new retail outlets when in fact, Wachovia not only opposed that provision, but actually required Wolf to transfer those proceeds to Wachovia. Kodak also contends that Wachovia fraudulently failed to disclose its agreement with Wolf pursuant to which Wolf was required to pay its loan proceeds to Wachovia, failed to inform Kodak of Wolf's admissions regarding its inability to meet certain covenants made to Wachovia, and failed to inform Kodak of its decision to forgive or excuse Wolf's loan defaults.

To state a claim for fraud under New York law, the plaintiff must allege that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." Bridgestone/Firestone, Inc. v. Recovery Credit Services, Inc., 98 F.3d 13, 19 (2nd Cir. 1996). See also S.Q.K.F.C., Inc. v. Bell Atlantic TriCon Leasing Corp., 84 F.3d 629, 633 (2nd Cir. 1996). To state a claim for fraudulent concealment of a fact under New York Law, the plaintiff must first allege the elements of a typical common-law fraud claim. Specifically, the plaintiff must establish that the defendant, with an intent to defraud, knowingly failed to disclose a material fact, that the plaintiff relied on the defendant's incomplete disclosure, and that the plaintiff was harmed as a result of the non-

disclosure.  Hughes v. BCI International Holdings, Inc., 452 F.Supp.2d 290, 302 (S.D.N.Y. 2006).  Additionally, in cases where the alleged fraud resulted from the omission of information by a party, the plaintiff must establish that a duty to disclose such information arose as a result of a special relationship (such as a fiduciary relationship) between the parties, or that a duty to disclose arose as the result of the fact that the defendant possessed "superior knowledge not readily available to the plaintiff" or that the defendant knew that the "plaintiff was acting under a mistaken belief with respect to a material fact." Hughes, 452 F.Supp.2d at 303.

Wachovia moves to dismiss Kodak's fraud claims on grounds that the fraud claims are duplicative of the breach of contract claims, and therefore may not be allowed to proceed under New York law.  Wachovia contends that the allegations of fraud all relate to duties that were owed under the contract, and that because the allegations amount to no more than an alleged breach of contract, Kodak's fraud claims should be dismissed.

While it is well established under New York law that a breach of contract will not ordinarily give rise to a tort claim, where the plaintiff alleges that the defendant breached a duty that was owed to the plaintiff independent of any duty owed under the terms of the contract, such a claim may be allowed to proceed under a theory of fraud.  Agency Development, Inc. v. MedAmerica Ins. Co.

of New York, 327 F.Supp.2d 199, 206 (W.D.N.Y., 2004)(Larimer, J.)("a simple breach of contract may not be transformed into a tort unless a legal duty independent of the contract itself has been violated.")(quoting Fleet Bank of New York v. Douglas-Guardian Warehouse Corp., 229 A.D.2d 962, 962, 645 N.Y.S.2d 384 (4th Dep't 1996). Moreover, a fraud claim may pursued simultaneously with a contract claim where the plaintiff can demonstrate that the defendant made "a fraudulent misrepresentation collateral or extraneous to the contract" or where the plaintiff seeks "special damages that are caused by the misrepresentation and unrecoverable as contract damages." Solutia Inc. v. FMC Corporation, 385 F.Supp.2d 324, 342 (S.D.N.Y. 2005)(quoting Bridgestone/Firestone, Inc., 98 F.3d at 20 (2nd Cir. 1996).

New York law explicitly recognizes three situations in which a party "has an independent duty to be truthful" to another party. Concorde Financial Corp v. Value line, Inc., 2004 WL 1687205, *6 (S.D.N.Y. July 28, 2004). First, "where the party has made a partial or ambiguous statement" the party is obligated to make a complete disclosure of the truth on grounds that "once a party has undertaken to mention a relevant fact to the other party, it cannot give only half of the truth . . . ." Concorde Financial, 2004 WL 1687205 at *6 (quoting Tomoka Re Holdings, Inc. v. Loughlin, 2004 WL 1118178 at *5 (S.D.N.Y. May 19, 2004). Second, a party may be obligated to disclose relevant information to another party where

11

there exists a fiduciary or confidential relationship.  Id. Finally, a party may be obligated to disclose relevant facts "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." Id.

In the instant case, Kodak has alleged that Wachovia had a legal duty to disclose information about Wolf and Wolf's interactions with Wachovia that arose separately from the duties mandated by the Intercreditor Agreement, and therefore, has stated a cause of action for fraud.  First, Kodak alleges that Wachovia had a legal duty to disclose that it would require Wolf to pay the proceeds from the Kodak loan to Wachovia because Wachovia was aware that Kodak was making the loan under the assumption and explicit understanding that Wolf would spend the loan proceeds to expand its business.  Kodak contends that because Wachovia reviewed the loan agreement between Kodak and Wolf, objected to portions of it, but did not object to the provision regarding use of proceeds, Wachovia knowingly and fraudulently, by omission, misrepresented to Kodak that it did not object to the requirement that Wolf spend the money on expanding its business, when in fact, it did object to that provision, and indeed, allegedly forced Wolf to agree to transfer the loan proceeds directly to Wachovia.  Additionally, Kodak contends that Wachovia knew that Kodak was operating under a misapprehension that the loan proceeds would be used by Wolf to

expand its business because Wachovia knew that Kodak was unaware of the agreement between Wolf and Wachovia which required Wachovia to use the loan proceeds to pay down old debt to Wachovia.  Kodak has alleged that Wachovia knowingly made these representations with an intent to defraud Kodak of the loan proceeds it paid to Wolf, and that Kodak relied on the Wachovia's fraudulent ascent to the Kodak/Wolf loan agreement to its detriment.  Accordingly, Kodak has sufficiently alleged the elements of a claim for fraud.

While it may be true that the actual duty imposed on Wachovia in tort (the duty to disclose relevant information) is identical to the duty imposed on it under the Intercreditor Agreement, the fact that the duties are the same does not foreclose plaintiff's right to pursue its claims under both tort and contract theories. Because the duties arise from different legal obligations, Kodak may pursue its claims under each legal theory. See Solutia Inc. v. FMC Corporation, 385 F.Supp.2d at 342 (holding that a "misrepresentation concerning present facts states an independent claim of fraud even when the contract expressly warrants the accuracy of the defendant's representations.") (emphasis added). Because Kodak has sufficiently alleged the elements of a claim for breach of contract and an independent claim of fraud, I deny Wachovia's motion to dismiss those claims.

    IV.   Interference with Contractual Relations

Kodak contends that Wachovia interfered with Kodak's contractual relations with Wolf by procuring Wolf's breach of the agreement under which Kodak agreed to lend $30,000,000.00 to Wolf.

"Under New York law, the elements of tortious interference with contract are (1) 'the existence of a valid contract between the plaintiff and a third party'; (2) the 'defendant's knowledge of the contract'; (3) the 'defendant's intentional procurement of the third-party's breach of the contract without justification'; (4) 'actual breach of the contract'; and (5) 'damages resulting therefrom.'" Kirch v. Liberty Media Corp, 449 F.3d 388, 401 (2nd Cir. 2006)(quoting Lama Holding Co. v. Smith Barney Inc., 88 N.Y.2d 413, 424, (1996)); . NBT Bancorp Inc. v. Fleet/Norstar Financial Group, Inc., 87 N.Y.2d 614, 620-21 (1996).

In the instant case, Kodak has satisfied its pleading requirement.  First, Kodak has alleged the existence of a contract between itself and Wolf. Second, Kodak has alleged that Wachovia knew of the contract, and indeed, had copies of the contract and drafts of the contract.  Third, Kodak has alleged that Wachovia, without justification, intentionally procured Wolf's breach of its agreement with Kodak by requiring that Wolf use the loan proceeds from Kodak to pay-down debt to Wachovia, in violation of requirement that Wolf use the money to expand its business. Fourth, Kodak has alleged that Wolf did in fact breach its agreement with Kodak by using the loan proceeds to pay down debt

rather than expand its business. Finally, Kodak has alleged damages resulting from the breach of contract that was allegedly procured by Wachovia.

Wachovia contends that Kodak has failed to state a claim for interference with contractual relations because Wolf could have re-borrowed the $30,000,000.00 it paid to Wachovia from Wachovia, and thus would have had $30,000,000.00 to expand its business. Aside from the fact that this contention raises a myriad of factual issues that are not suitable for consideration on a motion for summary judgment, the claim is inapposite with respect to Kodak's prima facie case. Whether or not Wolf had access to some other source of funding to obtain an equal amount of money it received from Kodak is immaterial to the issue of whether or not Wachovia induced Wolf to breach Wolf's agreement with Kodak, and whether or not Wolf breached the contract.

Wachovia further argues that it was justified as a matter of law in requiring that Wolf pay the $30,000,000.00 it received from Kodak to Wachovia, and therefore Kodak has failed to sufficiently allege that Wachovia procured Wolf's alleged breach of contract without justification. Whether or not Wachovia's actions were justified, however, is not a question that can be resolved in considering a motion to dismiss, where the well-pleaded allegations of the Complaint are accepted as true. Accordingly, because Kodak

has sufficiently stated a claim for interference with contractual relations, I deny defendant's motion to dismiss that claim.

CONCLUSION

For the reasons set forth above, I deny defendant's motion to dismiss.

ALL OF THE ABOVE IS SO ORDERED.

S/ Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         August 21, 2007